IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES TALBERT, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 12-6533 |
| | : | |
| MARK KAPLAN, | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                             August 20, 2013

     Charles Talbert brings this action pursuant to 42 U.S.C. § 1983 alleging that Mark Kaplan, MD, a private trauma surgeon, violated his rights under the Eighth Amendment[1] to the United States Constitution. Dr. Kaplan filed a motion to dismiss arguing, *inter alia,* that Mr. Talbert's claim against him must be dismissed because Dr. Kaplan cannot be considered a state actor. For the following reasons, I will grant the motion in its entirety.

**I. BACKGROUND**[2]

     The complaint alleges that on February 4, 2011, Mr. Talbert was shot multiple times in the upper half of his body. He was taken by ambulance to Albert Einstein Medical Center's Emergency Room, "where Defendant Dr. Mark Kaplan performed

---

[1] The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII.

[2] The facts are gleaned from the complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

immaculate surgery and saved [Mr. Talbert's] life."[3] See Compl. ¶ 8. Mr. Talbert remained in the hospital as a private patient and was followed by Dr. Kaplan. During the course of healing from the gun shots and surgery, Mr. Talbert required a colostomy[4] and other painful treatments to prevent infection. Dr. Kaplan allegedly promised Mr. Talbert that the colostomy was reversible, and that he would not have to worry about wearing it for the rest of his life. Id. at ¶ 10.

One day while Mr. Talbert was still hospitalized, Dr. Kaplan was examining him and ordered the nurse to change the sponge that was inside of Mr. Talbert connected to his wound. Mr. Talbert "kindly declined" because a nurse had already changed the sponge about a half hour before the doctor's visit. Id. at ¶ 13. The procedure was very painful to Mr. Talbert, and he did not wish to go through it twice within such a short span of time. The complaint alleges that, after Mr. Talbert declined the procedure, Dr. Kaplan "got nasty at the mouth, unprofessionally, calling [Mr. Talbert] a 'liar,' in which grabbed" the attention of the nurse, Mr. Talbert, and his girlfriend. Id. at ¶ 14. After the physician "disrespected [Mr. Talbert] verbally, [Mr. Talbert] made it out of [his] bed, and into [Dr. Kaplan's] face, telling him not to ever verbally, or in no shape, or form disrespect [Mr. Talbert], by calling [Mr. Talbert] out of [his] name again or it would be a

---

[3] I note that at the time of the shooting, surgery, and subsequent admission to Albert Einstein, Mr. Talbert was neither a prisoner nor charged with a crime. See Compl. ¶ 20.

[4] A colostomy is defined as an artificial exit from the colon created to divert waste through a hole in the colon and through the wall of the abdomen. It is commonly performed by severing the colon and then attaching the end leading to the stomach to the skin, through the wall of the abdomen. At the exterior opening (stoma), a bag can be attached for waste removal. Usually a colostomy is performed because of infection, blockage, cancer, or in rare instances, severe trauma of the colon. http://www.medterms.com/script/main/art.asp?articlekey=2796.

problem." Id. at ¶ 15. Afterwards, Dr. Kaplan's "demeanor suddenly seemed vengeful when he replied back that [Mr. Talbert] was not grateful of nothing [sic] [Dr. Kaplan] did to help [Mr. Talbert] when [he] got shot." Id. at ¶ 17. Mr. Talbert, his father, and his girlfriend then agreed that Mr. Talbert should find another trauma surgeon, because they felt that "Dr. Kaplan had the potential of holding a grudge." Id. at ¶ 18. During every other routine check-up during the month of February 2011, "Dr. Kaplan seemed very distant, as if venom was [sic] lying underneath his ulterior motive." Id. at ¶ 19.

In July 2011, Mr. Talbert was arrested and incarcerated at the Curran Fromhold Correctional Facility, where Corizon Medical provides health care to the inmates. Id. at ¶¶ 20-21. For approximately a year, Mr. Talbert was brought periodically to Albert Einstein to be examined by Dr. Kaplan to determine when surgery could be performed to reverse Mr. Talbert's colostomy. Id. at ¶¶ 22-23. On February 10, 2012, the scheduled day of the colostomy reversal, Dr. Kaplan allegedly reassured Mr. Talbert that after a short procedure, he would be "back to normal." Id. at ¶ 25. Upon awaking from the anesthesia, Mr. Talbert was informed that he "had a hole put into [his] bladder during surgery, and [he] also had an ileostomy[5] instead of a colostomy." Id. at ¶ 26.

When Mr. Talbert informed Dr. Kaplan that the surgery resulted in his "urinating out of [his] anus," Dr. Kaplan again called Mr. Talbert a "liar." Id. at ¶ 27. Because a nurse verified Mr. Talbert's allegations, Dr. Kaplan ordered further testing to evaluate Mr. Talbert's condition. Id. at ¶¶ 28-29.

---

[5] An ileostomy is defined as an opening into the ileum, part of the small intestine, from the outside of the body. It provides a new path for waste material to leave the body after part of the intestine has been removed. See www.medterms.com/script/main/art.asp?articlekey=22428.

3

The complaint alleges that although Mr. Talbert was brought to the hospital for the reversal of his colostomy, he instead received "an injured bladder, bladder spasms, pain in [his] pelvic bone, urinary tracking infection, an ileostomy, a fistula, severe loss of weight, loss of appetite, nausea, psychological pain, embarrassment, humiliation, and emotional distress."[6]  Id. at ¶ 32.

The complaint further alleges that considering that Dr. Kaplan had promised Mr. Talbert that everything would be fine after reversal surgery, the injuries Mr. Talbert sustained from the surgery must have been due to negligence, at the very least, or were "premeditated and intentional, at the highest level of scrutiny."  Id. at ¶ 35.  Mr. Talbert suspects, however, that Dr. Kaplan's performance in surgery was "done out of cruelty, punishing [Mr. Talbert] maliciously for how [Mr. Talbert] got into [Dr. Kaplan's] face and threatened [Dr. Kaplan] for calling [Mr. Talbert] a 'liar,' in which [Dr. Kaplan] felt embarrassed and humiliated in front of another nurse and [Mr. Talbert's] girlfriend."  Id. at ¶ 36.

## II.  STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In

---

[6] This embarrassment and humiliation included the correctional officers making "wicked mockery" of Mr. Talbert's urinary deficiency, exclaiming that he was "urinating sitting down like a woman."  The officers further told everyone at the prison about Mr. Talbert's condition which "ruined [his] suave reputation."  See Compl. ¶ 33.

4

determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to

dismiss." Id. at 679 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id. at 680 (emphasis added).

Finally, I note that I must construe this complaint liberally. As the Supreme Court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 520-521 (quoting Conley v. Gibson, 355 U.S. at 45-46).

## III. DISCUSSION

In bringing this action under § 1983, Mr. Talbert alleges that Dr. Kaplan, who "acted under color of state law," violated Mr. Talbert's rights under the Eighth Amendment to the United States Constitution." See Compl. ¶¶ 5 and 13. Mr. Talbert insists that Dr. Kaplan intentionally injured Mr. Talbert's bladder, and intentionally caused all of his other medical deficiencies. Id. ¶ 13.

Title 42 of the United States Code § 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); see also Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, in evaluating § 1983 claims, the Supreme Court has set forth two threshold inquiries: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also West v. Atkins, 487 U.S. 42, 48 (1988); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Action under color of state law requires that the one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).

Dr. Kaplan is not a state actor. There is no allegation in the complaint that Dr. Kaplan was employed by or under contract with either the Philadelphia Department of Corrections or Corizon Medical, the corporate prison health care provider. He is a private surgeon who was the trauma surgeon on call at Albert Einstein Medical Center on the night Mr. Talbert was shot, and who continued to treat Mr. Talbert during his

recovery and beyond.  Dr. Kaplan is the physician who Mr. Talbert admits saved Mr. Talbert's life.  Mr. Talbert became a private patient at Albert Einstein on the night his ordeal began.  He was incarcerated approximately six months later.  Prison officials returned Mr. Talbert to Dr. Kaplan's care so that Dr. Kaplan could finish the course of treatment necessary to restore Mr. Talbert to his pre-shooting health.  Mr. Talbert's return to Dr. Kaplan while incarcerated had nothing to do with his status as a prisoner, but with good medical judgment to continue with the same surgeon for subsequent remedial surgery.  Under these circumstances, Dr. Kaplan cannot be said to have exercised power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.  Thus, Dr. Kaplan did not violate Mr. Talbert's constitutional rights, and Mr. Talbert's claim of an Eight Amendment violation must fail.  Accordingly, I will grant Dr. Kaplan's motion to dismiss this action against him in its entirety.

In the alternative, even if it were possible to consider Dr. Kaplan a state actor, Mr. Talbert's claim would still fail.  The Eighth Amendment "requires prison officials to provide basic medical treatment to those . . . incarcerated."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (discussing Estelle v. Gamble, 429 U.S. 97 (1976)).  To establish an Eighth Amendment violation based on improper medical care, a prisoner must show acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  Estelle v. Gamble, 429 U.S. at 106.  The Third Circuit Court of Appeals has interpreted this to mean that there are two prongs to the inquiry: (1) deliberate indifference on the part of prison officials; and (2) the prisoner's medical needs are serious.  Monmouth County Corr. Inst. Inmates v. Lanzaro, et al., 834 F.2d 326, 346 (3d

Cir. 1987); Rouse, 182 F.3d at 197.  Under the first element, a prisoner can establish "deliberate indifference when the record would allow the fact finder to conclude that a prison official is subjectively aware of the risk of substantial harm to an inmate, but failed to respond."  Meyers v. Majkic, 189 Fed. Appx. 142, 143 (3d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 828 (1970)).  Negligent conduct by a prison official, "without some more culpable state of mind," is not enough to constitute deliberate indifference.  See Rouse, 182 F.3d at 197.  As for the second element, a prisoner's medical needs are serious when they have been "'diagnosed by a physician as requiring treatment' or [are] so obvious that a layperson would recognize the need for professional medical care."  Meyers, 189 Fed. Appx. at 143 (quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 346).

     Certainly, Mr. Talbert's medical needs were serious.  He underwent extensive surgery on the night he was shot.  That surgery resulted in a reversible colostomy which required continued care to avoid infection.  Dr. Kaplan, however, cannot be characterized as deliberately indifferent under the facts of this case.  The complaint alleges that, once incarcerated, Mr. Talbert was repeatedly brought to Dr. Kaplan's office by prison officials, so that Dr. Kaplan could evaluate Mr. Talbert's condition and determine when Mr. Talbert would be best prepared for the reversal surgery.  See Compl. ¶¶ 22-23.  His surgery was performed on February 10, 2012.  In a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.  See Inmates of Allegheny County Jail v. Pierce, et al., 612 F.2d 754, 762 (3d Cir. 1979); see also Clark v. Doe, et al., 2000 U.S. Dist. LEXIS 14999, at *8

(E.D. Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care.")  "While the distinction between deliberate indifference and malpractice can be subtle, it is well-established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  Brown v. Borough of Chambersburg, et al., 903 F.2d 274, 278 (3d Cir. 1990).  In fact, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner was dissatisfied with the outcome of these services.  See Ham v. Greer, et al., 269 Fed. Appx. 149 (3d Cir. 2008); James v. Dep't of Corrections, et al., 230 Fed. Appx, 195 (3d Cir. 2007); Gillespie v. Hogan, et al., 182 Fed. Appx. 103 (3d Cir. 2006).  Further, the Supreme Court of the United States in Estelle v. Gamble held:

> "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

Estelle, 429 U.S. at 106.  Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts because such determinations remain a question of sound professional judgment.  Inmates of Allegheny County Jail, 612 F.2d at 762 (noting that courts generally will not gainsay the professional judgment of medical practitioners).  During the time Mr. Talbert was incarcerated, he was brought to Dr. Kaplan for follow-up care and reversal surgery.  The surgery resulted in further

10

complications with Mr. Talbert's bladder. Given the facts alleged by Mr. Talbert, it appears undisputed that Dr. Kaplan promptly and repeatedly addressed Mr. Talbert's medical concerns. An assertion that Dr. Kaplan's performance in the second surgery was clouded by vengeance for a year-old incident is frivolous. Thus, Mr. Talbert has not alleged deliberate indifference to a serious medical need, the touchstone for any Eighth Amendment claim in a prison medical context. Dissatisfaction with the outcome of the medical care received is insufficient to establish deliberate indifference. While these circumstances might fit a cause of negligence or medical malpractice, they do not rise to the level of deliberate indifference required for claims brought under § 1983 based on Eighth Amendment violations. Accordingly, even if Dr. Kaplan could be considered a state actor, this claim would still fail. I will grant Dr. Kaplan's motion to dismiss in its entirety.[7]

An appropriate Order follows.

---

[7] A district court should ordinarily allow a *pro se* plaintiff to amend his complaint, unless amendment would be inequitable or futile. Grayson v. Mayview State Hospital, 293 F.3d 103, 113-114 (3d Cir. 2002). Here, amendment would be futile because it is apparent that his case concerns matters of state law, i.e., medical malpractice, and that there is no basis for diversity jurisdiction.